# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CIVIL ACTION NO. 5:19-cv-00035-TBR

GREG TACKETT                                                                      PLAINTIFF

v.

XPO LOGISTICS, INC.,                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant XPO Logistics, Inc.'s ("XPO") Motion for Summary Judgment. [DN 19.] Plaintiff Greg Tackett ("Tackett") has responded. [DN 21.] XPO has replied. [DN 24.] As such, this matter is ripe for adjudication. For the reasons that follow, XPO's Motion for Summary Judgment is **GRANTED**.

## I. Background

Tackett has had a commercial driver's license since 1995 or 1996. He has been employed driving various trucks since obtaining this license. In 2011, Tackett was hired as a Driver Sales Representative ("DSR") by Con-Way. Con-Way was later acquired by XPO and Tackett remained employed there.

As a DSR, Tackett was tasked with delivering and picking up freight from various customer locations. He received a list of stops for the day, and instructions for picking up or delivering freight. All drivers were required to contact dispatch whenever they were delayed in arrival to a location or they were at a location longer than expected.

Tackett was terminated in August 2016 allegedly due to poor performance. Between November 14, 2011 and Tackett's termination, he received, thirteen incident reports, letters of communication, and letters of instruction. Many of the reports were issued for Tackett not following the proper route or failing to communicate with dispatch about delays. Tackett alleges

many of the performance issues were due to issues with his memory. After issuing several of the discipline reports, XPO provided some metrics for Tackett to meet in order to be more efficient. However, XPO determined Tackett had not improved his performance and terminated his employment. Tackett appealed his termination to the Employee Termination Review Board. The Board reversed his termination and reinstated him without back pay.

When Tackett was notified that he was being terminated, he spoke with a representative in the Human Resources department on a Wednesday afternoon and stated he was being harassed. Tackett told the representative Scott Ives, the Freight Operations Supervisor, and Ty Campbell, the Service Center Manager, were "constantly on him" and made "a lot of negative comments". On the following Monday morning, the representative stated an investigation was completed and there was no harassment.

After Tackett returned to work at XPO, Campbell took Tackett off of his previous routes and reassigned him to locations near the Paducah facility. XPO alleges this was done to address Tackett's performance issues. Tackett alleges this was done in retaliation for speaking with the HR representative. Prior to Tackett's second termination, he was disciplined three times for violating XPO's smoking policy, and had an incident with a customer.

The final event prior to Tackett's ultimate termination was an argument between Tackett and the manager at Dippin' Dots, Jeff Van Cleve. Tackett and Van Cleve argued about a signature on the bill of lading. This resulted in Van Cleve contacting Campbell and requesting Tackett not return to the Dippin' Dots property. After receiving the call from Van Cleve describing the incident, Campbell emailed human resources representative, Beth Lisby, to make her aware of the issue and to request approval for termination. Termination was approved, and Tackett was terminated in May 2018.

Tackett filed the present action on March 3, 2019. He alleged: violation of the Americans with Disabilities Act ("ADA"); retaliation in violation of the ADA; smoking discrimination in violation of the Kentucky Civil Rights Act; and discrimination and retaliation in violation of the Kentucky Civil Rights Act. XPO now argues summary judgment on all claims is appropriate.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

## III. Discussion

### A. Violation of the ADA and Kentucky Civil Rights Act

#### 1. Was Tackett disabled

XPO argues both claims must be dismissed as a matter of law because Tackett has not shown he was disabled. The Court agrees.

In order to establish a *prima facie* case, a plaintiff must show: "(1) he was "disabled;" (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered an adverse employment action (4) his employer knew or had reason to know of his disability; and (5) either the position remained open or a non-disabled person replaced him." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 417 (6th Cir.2004).

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). 42 U.S.C. § 12102(1). "The definition of disability…shall be construed in favor of broad coverage of individuals". 42 U.S.C. § 12102(4)(A).

Tackett states he was hit by a car when he was 12 years old which left him with short-term memory loss. [DN 17 at 179: 6-8.] He did not recall any specific diagnosis from the doctor but stated "my mom told me that [the doctor] told her I would always have memory problems from that day forward because of this severe, severe concussion." [*Id.* at 183: 6-11.] Tackett has not provided medical records from this incident. He has never been evaluated by a healthcare professional regarding his memory issues. [*Id.* at 19-22.] Tackett argues that his own testimony and the statements of other drivers corroborates his claim that his memory issues substantially limited a major life activity. Although Tackett is correct that generally "scientific, medical, or

statistical analysis" is not needed to establish whether a major life activity is substantially limited, this evidence does not meet the threshold issue of whether Tackett had a physical or mental impairment. 29 C.F.R. § 1630.2(j)(1)(v); *See Neely v. Benchmark Family Services,* 640 Fed. Appx. 429, 434 (6th Cir. 2016) (A plaintiff's "own experience in determining whether a major life activity is affected, [not establishing a disability], is sufficient.")

XPO cites to *Neely* for the proposition that a plaintiff's own belief cannot establish a disability. In *Neely*, Neely alleged he was terminated due to discrimination related to his sleep issues. 640 Fed. Appx. at 431. Neely complained of sleep issues to his primary care physician. *Id.* at 433. His physician did not diagnose him with sleep apnea or any other sleep disorder. *Id.* However, the physician referred Neely to a sleep specialist. *Id.* The sleep specialist also did not diagnose Neely with sleep apnea. *Id.* However, he did not rule out a possible diagnosis of sleep apnea and recommended additional testing. *Id.* Neely never followed up with the additional testing. *Id.* The Court found "Neely's bare assertions of sleep apnea, without any supporting medical evidence, cannot establish a 'physical or mental impairment' within the meaning of the ADA." *Id.*

Tackett argues *Neely* does not apply here because that case involved medical evidence that was contradictory to Neely's claim and Tackett has not offered any medical testimony. The Court disagrees. The Court in *Neely* did not find the offered evidence contradictory. The Court only found that none of the offered evidence proved Neely's self-diagnosis of sleep apnea. Neely's record of seeking treatment for his sleeping issues was not enough to survive summary judgment on the issue of the presence of a disability. Here, Tackett has never sought treatment for his memory issues. Therefore, he has not provided any evidence the he had an impairment.

In a footnote, Tackett states he did not remember the name of the doctor or facility that treated him after he was hit by the car but XPO could have identified the facility and obtained the

5

records because Tackett provided the address. [DN 21 at 18.] However, it is Tackett, not XPO, who has the burden to prove the presence of a disability. Tackett has not provided any evidence on the issue of the presence of a physical or mental impairment. Instead, he has provided evidence alleging he was substantially limited. Without more, Tackett cannot establish a *prima facie* case and the Court must dismiss these claims. The Court need not address XPO's arguments on pretext and reasonable accommodation due to the claims being dismissed on other grounds.

**B. Retaliation in Violation of the ADA**

XPO argues Tackett's claim must be dismissed because Tackett cannot establish a *prima facie* case. The Court agrees.

42 U.S.C. § 12203(a) states:

"[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

A plaintiff must show "(1) he engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against him; and (4) there was a causal connection between the protected activity and the adverse action." *Barlia v. MWI Veterinary Supply, Inc.,* 721 Fed. Appx. 439, 450 (6th Cir. 2018) (quoting *Rorrer v. City of Stow,* 743 F.3d 1025, 1046 (6th Cir. 2014)).

**1. Protected Activity**

"The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer,* 743 F.3d at 1046. On the day of his initial termination, Tackett reached out to a HR representative and told the representative he was being harassed and asked for an investigation. [DN 17 at 63:5-8.] Tackett informed the representative

6

that Scott Ives and Ty Campbell were "constantly singling me out for disciplinary action, that they weren't disciplining other people for." [*Id.* at 65: 3-12.] Tackett stated Ives would make comments such as "every day can't be your first day" and "you can't get right". [*Id.* at 67: 10-16.] In his deposition, Tackett stated he thought these comments were made because "they didn't like me." [*Id.* at 67: 20-23.] These comments were made whenever Tackett made some mistake. [*Id.* at 68: 9-15.] Tackett's route was also changed after this complaint was made. This change in route resulted in Tackett doing more dock work which was less favorable than driving routes. [DN 18 at 34: 4-25; 35:1-3.]

The Complaint states, "Defendant harassed Mr. Tackett, disciplined him, and moved him to less favorable work assignments for filing a complaint of discrimination". [DN 1 at 5.] However, Tackett plainly states he reported being harassed not discriminated against. In fact, in his deposition, Tackett stated it was "more harassment than discrimination." [DN 17 at 66:7.] Tackett did not complain to the representative of discrimination related to his memory issues or any other disability. Even if Campbell and Ives made these comments, or changed his route in response to Tackett's complaint, they cannot be the basis for a retaliation in violation of the ADA claim. Tackett cannot prove he was engaged in protected activity under the ADA and therefore this claim must be dismissed.

2. **Employer Knew of Activity**

XPO also argues even if Tackett could establish he was engaged in protected activity, he has not put forth any evidence that Campbell was aware of Tackett speaking with HR. Tackett does not respond to this argument in his brief. There is no evidence on the record that Campbell was aware of Tackett's conversation with a HR representative when he initiated the termination process in 2018. Campbell has stated that he was not aware of Tackett's complaint with HR prior

7

to Tackett's termination. [DN 19-1 at PageID 478.] Without evidence to the contrary, Tackett has not met his burden and the Court must dismiss this claim.

   3. **Causal Connection**

XPO further argues Tackett cannot establish a causal connection. Tackett again did not respond to this argument. XPO argues the lapse of two years between the complaint and Tackett's ultimate termination is too great to establish causal connection. The Court agrees that a period of two years is too great to infer causal connection. *See Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008) ("where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality"); *Cooper v. City of N. Olmsted,* 795 F.2d 1265, 1272–73 (6th Cir.1986). However, Tackett also alleged his route was changed and he was assigned dock work in retaliation. These actions were taken immediately upon Tackett's reinstatement. Therefore, there would be sufficient temporal proximity to infer causal connection for these actions if Tackett offered evidence that Campbell knew of Tackett's complaint. *See Mickey,* 516 F.3d 516 at 525 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation.") However, Tackett has not offered evidence of knowledge and cannot satisfy his burden of causal connection.

   4. **Pretext**

Finally, XPO argues even if Tackett established a *prima facie* case of retaliation, XPO has provided legitimate reasons for Tackett's termination. XPO states Tackett was terminated for the multiple performance issues, violations of the smoking policy, and his incident with Dippin' Dots.

Tackett argues XPO's reason is pretextual because he did everything XPO asked of him and engaged in the same behavior other employees did but were not terminated. XPO correctly states that Tackett has only provided evidence that there were drivers who smoked in the truck or drivers who had altercations with customers and were not fired. Tackett does not allege or identify any employee that had multiple performance issues, smoking violations, and an incident with a customer—or a similar record—and was not terminated.

"The usual way to show pretext is to demonstrate that the employer's stated reason for the adverse employment action: (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 345–46 (6th Cir. 2012). "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for [his]termination" *Raithatha v. Unitersity of Pikeville,* 2017 WL 4583245 *5 (E.D. Ky. Oct. 13, 2017) (citing *Wargield v. Lebanon Correctional Inst.,* 181 F.3d 723 (6th Cir. 1999). "Ultimately, a plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation and find that the employer's reason was a pretext for unlawful discrimination." *Worthy,* 472 F. App'x at 346.

Tackett provided declarations of other employees that stated either they had smoked in trucks or knew of people that smoked in trucks and either received a warning or no discipline. [DN 21-3 at PageID 600; DN 21-4 at 11: 24-25 and 12: 1-3; DN 21-5 at PageID 603.] However, all incidents of someone smoking in the truck would not necessarily be noticed by XPO. Tackett was recorded on camera smoking in the truck all three times. [DN 17 144: 2-13; 146: 19-22; 150: 5-9.] The camera system XPO equipped its trucks with would only record when it was triggered either by a hard brake or hitting a bump. [DN 17 144: 14-17.] Once triggered, the camera records the previous eight seconds and four seconds after it is triggered. [*Id.* at 144: 19-21.] If a driver was

9

idle while smoking, the camera would not be triggered and XPO would not be aware. [DN 18 52: 14-18.] XPO's decision not to terminate all who smoked in their trucks does not show the termination of Tackett was pretext.

Tackett also provided a portion of the deposition of another employee, Kenneth Brewer. Brewer stated he heard of other employees making "customers mad" and "being moved from one route to another" but he was not sure of what discipline those employees received. [DN 21-4 13: 1-21.] Tackett has failed to provide evidence that any employee had a similar record and was terminated. Without such evidence, Tackett cannot prove XPO's reasoning was pretextual and the claim must be dismissed. *See Maben v. Sw. Med. Clinic, P.C.,* No. 2015 WL 357051, at *4 (W.D. Mich. Jan. 27, 2015), aff'd sub nom. *Maben v. Sw. Med. Clinic*, 630 F. App'x 438 (6th Cir. 2015) ("Maben has not demonstrated that any proposed comparator shared her extensive disciplinary record, or a disciplinary record that included acts of comparable seriousness.").

**C. Smoking Discrimination**

XPO argues summary judgment is appropriate because Tackett admitted he violated XPO's policy prohibiting smoking on three occasions. Tackett argues the policy was enforced arbitrarily.

Kentucky law states in relevant part:

(1) It is an unlawful practice for an employer:

    (a) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment…because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking

Ky. Rev. Stat. § 344.040(1)(a).

Here, Tackett was caught three times on camera smoking. He received a writeup for each incident. An individual is only protected under this statute if the person complies with the

workplace policy. Tackett did not comply with the policy. However, Tackett argues he complied with the policy to the same extent as other employees did.

As previously noted, Tackett provided declarations of several employees that stated they witnessed others smoking in their trucks. Matt Rickard further stated most employees were verbally warned when caught smoking and sometimes "management turned their back". [DN 21-6 at PageID 605.] Tackett argues he was treated different than other smokers. If Tackett was treated different than other smokers, it was not due to his status as a smoker. Tackett cannot sustain a claim of discrimination based on his status as a smoker by offering evidence he was treated differently than other smokers. Therefore, this claim must be dismissed.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that XPO's Motion for Summary Judgment [DN 19] is **GRANTED.** A judgment will follow.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 9, 2020

cc: counsel